## J. J. Pocock, Inc., to use, *v.* Levy et al. (Green, Appellant).

Argued November 20, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Maurice M. Green,* for appellant.

*Frank Streeper, Jr.,* with him *Romain C. Hassrick,* of *Hassrick, Stewart, Streeper & Abrahams,* for appellee.

OPINION BY BALDRIGE, J., January 27, 1938:

This appeal by the added defendant is from the finding of TUMOLILLO, J., of the municipal court, sitting without a jury, in a replevin action instituted July 9, 1931, involving the title to a frigidaire apparatus.

On June 24, 1930, J. J. Pocock, Inc., use-plaintiff leased to Louis J. Levy, original defendant, and installed in his store at 761 N. 47th Street, Philadelphia, certain refrigerator equipment. Under the terms of the bailment lease which was executed, Levy was to pay to the lessor a rental of $476, in twenty-four monthly installments, with the privilege to purchase the equipment for one dollar at the termination of the lease. Levy defaulted in his payments, the last of which was made on February 26, 1931. Samuel L. Green, the added defendant, in whose possession the equipment was found, claimed title and right of possession thereto as purchaser at a constable's sale following a distraint for rent due by Levy to Adolph and Sarah Brodsky. The trial judge found that the distraint, constable's sale, and the purchase by Green were fraudulent as to plaintiff, and that plaintiff's interest in the leased chattels was not thereby divested.

The appellant asserts (1) that plaintiff had no title or right of possession to the property in question at the time of the issuance of the writ of replevin; (2) that the court erred in refusing to admit in evidence certain paragraphs in the new matter of his affidavit of defense, which, he alleges, were insufficiently denied, under the rules of court and the Practice Act of May 14, 1915, P. L. 483, as amended by the Act of July 12, 1935, P. L. 666, §1 (12 PS §382 et seq.); (3) that the evidence offered by the plaintiff did not warrant the court's finding that fraud was practiced and that title and right of possession to this equipment were in the use-plaintiff.

(1) The plaintiff assigned all its right, title, and interest in the bailment lease to the General Motors Acceptance Corporation immediately after it was executed by Levy. The appellant contends there was no reassignment until October 22, 1931, which was after plaintiff had instituted this suit. E. Z. Brown, representative of the General Motors Acceptance Corporation, testified that Levy had defaulted in his payments

and thereupon the use-plaintiff paid the acceptance corporation the amount due; that on June 22, 1931, the latter reassigned the lease, but it was not returned to plaintiff until October 22, 1931. This evidence clearly established that the acceptance corporation admitted it had no right to, or interest in, this equipment after June 30, 1931. The use-plaintiff, having regained and retained title to it, was in the same position as though it had never assigned the lease. There was ample evidence to support the trial judge's finding on this branch of the case.

(2) The appellant offered in evidence paragraphs 9 to 16 inc., of the new matter in the supplemental affidavit of defense, alleging that they had not been properly denied by plaintiff in its reply. The court sustained objection to the admission thereof, holding that plaintiff's answers were sufficient.

The essential part of each averment in the pleadings was that the plaintiff "has no knowledge or means of obtaining knowledge of the facts set forth in ...... the new matter ...... and avers that the same is within the knowledge of the added defendant ...... and, therefore, denies the same and demands proof thereof at the trial of this case." Admittedly, there was not a literal compliance with the Practice Act.

We need not determine, however, whether plaintiff's answers were insufficient. The averments in these paragraphs relate to a lease entered into between the Brodskys and Levy for premises located at 47th and Brown streets; Levy's default in the payment of rent; the issuance of a distress warrant; the constable's levy and sale to Green. The appellant suffered no harm in the court's sustaining an objection to the admission of these paragraphs, as he was permitted to, and did, produce evidence, oral and documentary, which covered fully all these transactions. One cannot complain of error in the rejection of an offer of evidence, "if he or she is permitted later to introduce evidence substantially the

same as the evidence excluded": *Rodgers, Admrx. v. Fleming,* 325 Pa. 228, 233, 188 A. 861.

(3) That brings us to the last and most important question in the case. The record shows that Levy leased from the Brodskys for three years, from October 15, 1930, at a rental of $50 per month for the first year, the Brown street premises, located just around the corner from the 47th street store. Green, a real estate agent, is a brother-in-law of Levy and a son-in-law of the Brodskys. He negotiated the Brodskys' lease, which was signed in his office. Only two months after entering into the lease with the Brodskys, Levy defaulted in the payment of rent, and failed to pay for three months— December, 1930, and January and February, 1931. The lease contained an acceleration clause which provided that the rent for the remainder of the three-year term became immediately due and payable upon any default. The distraint was accordingly made on February 27, 1931, for $2,060, the balance of rent due under the terms of the lease, as per stipulation of counsel. Each article was sold separately at the constable's sale, and, although twenty-five or thirty bidders were present, the entire contents of Levy's store, including the bailed property, which sold for $300, was purchased by Green for a total of $989.

The regularity of the procedure followed in making the levy, sale, etc., was not questioned, and it must be conceded that the general rule is, that, excepting certain articles specifically exempted by statute, goods held by a tenant under a bailment lease are liable to distress for rent: *May, Stern & Co. v. Lintner,* 67 Pa. Superior Ct. 422; *National Cash Reg. Co. v. Ansell et al.,* 125 Pa. Superior Ct. 309, 189 A. 738. If, however, there was sufficient evidence that the constable's sale and purchase by the bailee's brother-in-law were fraudulent, having for their deliberate and sole purpose the depriving plaintiff of his interest in the bailed equipment, the

purchaser acquired no title thereto: *Manegold v. Quinn*, 45 Pa. Superior Ct. 482.

Fraud, if proven, always vitiates proceedings of this character, if the rights of third parties are involved: *Schott v. Chancellor*, 20 Pa. 195. The amount of evidence to prove fraud depends largely upon the circumstances in each case. "There is nothing peculiar in the determination of a question of fraud that makes it an exception to the general rule. Where there is evidence of fraud, its existence must be determined like any other fact:" *Young v. Edwards*, 72 Pa. 257, 267. It is stated in 23 C. J. p. 16, §1748: "Although a court or jury should be cautious in arriving at conclusions prejudicial to character and honesty, and should not find the existence of fraud upon mere suspicion, a preponderance of evidence is sufficient in ordinary cases to establish a charge of fraud." It must be borne in mind that we are not discussing the quantum and character of evidence necessary to set aside a written instrument on the ground of fraud.

The relationship of the parties did not of itself brand the distraint proceedings and the sale as fraudulent; but there were present other circumstances of a suspicious character. We refer to the default in payment of rent to the Brodskys by Levy, shortly after the lease was executed, when he owned personal property of a value considerably in excess of the rent due, which resulted in a judgment against him for more than $2,000 when he was in arrears but $150 in rent; and to the sale to Green, the brother-in-law, of all of Levy's personal property, including the unpaid-for equipment which he had seen installed originally in the store that Levy had rented from him, for a sum much greater than the amount of rent that had not been paid. Green had an intimate connection with all these transactions. As we have seen, he was the lessor of the premises that Levy first occupied; agent for the Brodskys in having a second

lease executed; and purchaser of all the property sold at the constable's sale.

The conduct of the witnesses on the stand and their manner of testifying, where the bona fides of a transaction otherwise valid on its face are in question, are always important elements for the fact finders to consider in determining an alleged fraud. The trial judge, in his opinion, said: "The Court having had the opportunity of observing every witness, their conduct on the witness stand and their manner of testifying, is convinced that the sale of the equipment to Green was a deliberate attempt to defraud the use-plaintiff." His findings are entitled to be given the same weight as those of a jury, and must stand if supported by evidence: *Armstrong County v. Rearic,* 315 Pa. 133, 135, 172 A. 130; *McKeague Mach. Co. v. O. & S. Mach. Co.,* 124 Pa. Superior Ct. 387, 392, 188 A. 543.

In view of all the facts and attending circumstances present in this record, we do not feel warranted in holding that the trial judge's finding of fraud was not based on sufficient evidence.

Judgment affirmed.