S. R. FREEMAN, Jr., Appellant,

v.

Frederic G. SWINK, Trustee in Bankruptcy of Bake-Rite Bakeries, Incorporated, Appellee.

No. 7720.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 22, 1958.

Decided Nov. 3, 1958.

Alan S. Mirman, Norfolk, Va., for appellant.

William C. Worthington, Norfolk, Va. (Worthington, White & Harper, Norfolk, Va., on the brief), for appellee.

Before HAYNSWORTH, Circuit Judge, and BARKSDALE and BRYAN, District Judges.

PER CURIAM.

Shortly after an adjudication of bankruptcy, the bankrupt's president and controlling stockholder filed a petition for abandonment of certain of the bankrupt's assets because of a deed of trust he had taken to secure his own position. The

Referee found that the deed of trust was fraudulent, and the District Court affirmed the finding. The claimant has appealed from the denial of his petition for abandonment.

The bankrupt, Bake-Rite Bakeries, was organized in May 1955 by S. R. Freeman, Jr. and others, who collectively paid $98,-000 for its capital stock. Freeman owned 63% of the voting stock, was the president, a director and the officer in active charge of the corporation. The physical assets of another bakery company were acquired for $50,000 and business was commenced. The venture was quite unprofitable, however, and the loss after seventeen months of operation amounted to $67,000. The Referee found that at all times after January 1, 1957 the corporation was insolvent. In a meeting of the Board of Directors in November 1956, it was concluded that a sale should be effected to avoid further losses. Thereafter, continuing until September 1957, Freeman apparently, but unsuccessfully, sought a purchaser.

Meanwhile, in July 1956, with Freeman's personal endorsement, the corporation had obtained a loan of $18,000 from a bank. Renewal notes were endorsed by Freeman in September and November 1956, but in January 1957, after a curtailment of $3,000, he failed to endorse a renewal note for $15,000. The unendorsed note was accepted by the bank through oversight, but the responsible official of the bank, prior to the next renewal in March, informed Freeman that the loan could not be carried without his personal endorsement. Freeman agreed to endorse the March renewal note. Subsequent renewals were also endorsed by him until August when he, by reason of his endorsement, paid the bank $5,000.

Acting with the advice of an attorney, Freeman on March 14, 1957 took from the corporation a note for $25,000 payable to himself secured by a deed of trust covering all of the corporation's plant and equipment. The trust deed recited that Freeman had advanced $22,000 to the corporation and that the trust deed was given to secure those and future advances. Actually Freeman had advanced no monies at that time, though he did have a claim of some $4,000 against the corporation upon an open account for materials purchased from Vita Food Products of which Freeman was the sole proprietor.

The corporation's note and the deed of trust were executed in the name of the corporation by Freeman, as President, and by his wife, as Secretary. The execution of the instruments was never considered at any meeting of the Board of Directors or of the stockholders. Indeed, no other director or stockholder was informed of the existence of the note or of the deed of trust until after the filing of the petition in bankruptcy, some six months later.

Freeman had been informed sometime after March 14, 1957 that the deed of trust would be valid against other creditors if no petition in bankruptcy was filed within four months of its recording, and the Referee and the District Judge found that Freeman undertook, successfully, to delay the filing of a petition until the four-month period had elapsed. One director, though then uninformed of the existence of the deed of trust, resigned because of his strong conviction that continued delay was most unfair to creditors.

■ When one to whom the active conduct of the affairs of a corporation has been entrusted acts secretly to prefer himself and delays bankruptcy until his preference acquires supposed immunity, he places the label of fraud upon his conduct and flagrantly violates his fiduciary duty. Nevertheless, Freeman advances the argument that he was not obligated to endorse the corporation's note in March 1957 and his doing so was a sufficient consideration for the security he took. What may be a technically sufficient consideration to support a promise in a transaction entered into for the benefit of the corporation, and its creditors generally, however, is quite irrelevant to this inquiry, for the force of the circumstances compels the conclusion that Freeman was acting to obtain a secret preference for himself to the detri-

ment of the corporation and its other creditors. A fraudulent preference of his own interest by a fiduciary does not escape the scrutiny of the Bankruptcy Court merely because the wrongdoer incidentally and voluntarily incurred a technical detriment. See Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L. Ed. 281.

Affirmed.