**In the Matter of EINHORN BROS., INC., Bankrupt.**

**No. 25233.**

United States District Court
E. D. Pennsylvania.

March 23, 1959.

Albert L. Bricklin, Bennett & Bricklin, Philadelphia, Pa., for Textile Banking Co., Inc., John M. Keefe, New York City, of counsel.

David Rosen, Goff & Rubin, Philadelphia, Pa., for Raymond R. Walsh, Receiver & Trustee in Bankruptcy.

Joseph B. Meranze, Philadelphia, Pa., for Health Insurance & Retirement Funds.

Isadore Gottlieb, Philadelphia, Pa., for landlord.

Harrington Adams, Acting Atty. Gen., Morley W. Baker, John F. Finney, Charles P. Mirarchi, Sr., Asst. Attys. Gen., Counsel for Commonwealth of Pennsylvania.

Thomas J. Curtin, referee.

CLARY, District Judge.

This matter is before the Court upon the Referee's Certificate of Review upon objections of a secured creditor to the Order of Final Distribution which disallowed a claim for priority. The facts out of which the present controversy arose may be briefly stated as follows: Einhorn Bros., Inc., (the "Bankrupt"), and Textile Banking Company, Inc., hereinafter called "Textile" (the objecting secured creditor), consummated an agreement whereby Textile, in return for loans made, obtained a security interest under the Uniform Commercial Code of

Pennsylvania in the bankrupt's merchandise inventories. This interest was perfected by filing in January 1957. Textile also purchased the bankrupt's accounts receivable. There is, however, no dispute concerning Textile's right to the proceeds of these accounts.

On November 12, 1957 the landlord levied a distraint for rent against the property of the bankrupt in the amount of $55,183.62 (excluding costs). Textile thereafter, on November 18, instituted an action of replevin with bond for the goods subject to its security interest. While a writ of replevin was issued and served also on November 18, the goods were never replevied. Later, on the same day, the debtor filed a petition for arrangement under Chapter XI (11 U.S. C.A. § 701 et seq.), subsequently converted into a proceeding in bankruptcy. The bankruptcy court issued an order which effectively restrained the execution of the writ of replevin. Textile never attempted to vacate this order. The inventories were accordingly processed, finished and sold in the arrangement proceedings. The resulting proceeds amounted to $23,-065.16. The total fund available for distribution was $45,985.14 including $10,-287.56 derived from collection of the accounts receivable.

In addition to those of the landlord and Textile, the following claims were presented: (a) costs and expenses of both the Chapter XI and bankruptcy proceedings; (b) wages, including a claim on behalf of the health and retirement fund of the employees' union; (c) unemployment contributions and interest due the Commonwealth of Pennsylvania; (d) withholding and social security taxes owing to the United States; and (e) other secured creditors. The total of the various claims far exceeded the fund in the possession of the trustee.

■ The referee held that the lien of the landlord was a statutory lien which, under § 67, sub. c(1) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. c(1), was subordinated in payment to the costs of administration and wage claims. Applying the doctrine In re Quaker City Uni-

form Co., 3 Cir., 1956, 238 F.2d 155, certiorari denied, 1957, Delsea Corp. v. Flickstein, 352 U.S. 1030, 77 S.Ct. 595, 1 L.Ed.2d 599, the referee then concluded that the interest of Textile, being inferior under Pennsylvania law to that of the landlord, was impliedly subordinated by § 67, sub. c(1). The referee further concluded that the claim of the Commonwealth was also entitled to payment prior to Textile.

Textile now assigns as error the subordination of its security interest to wages and costs of administration, and the superior position attributed to the Commonwealth's claim. No objection is made concerning the treatment afforded Textile with reference to the other claimants. For reasons hereafter explained the Court is of the opinion that both the landlord's claim and that of the Commonwealth constituted statutory liens superior under applicable Pennsylvania law to the security interest of Textile. Therefore, Textile's claim was properly subordinated under the Quaker City doctrine to both costs of administration and wages.

■ Textile has advanced numerous arguments relating to the landlord's lien with a view to avoiding the impact of Quaker City. Initially, it argues that the notice of distraint served upon the bankrupt did not include the inventories in question. The notice listed numerous items of machinery and equipment, and 300 dozen children's dresses. The amount of inventory not specifically listed does not appear. In addition, a printed provision of the notice states "together with all and singular the goods and chattels on the premises sufficient to pay the rent and costs." Textile invokes the *ejusdem generis* rule to negate the all-inclusive effect of this "catch-all" clause. The rule, normally utilized in connection with statutory construction, embodies the proposition that general words which follow specific ones are to be construed to refer to objects similar to those specifically enumerated. The specific words indicate the class of objects, while the general words encompass all

within the class. See 2 Sutherland, Statutory Construction §§ 4909–14 (3d ed. 1943). The effect of this rule in the instant case is far from clear; for part of the inventory, the dresses, was specified. Regardless of this, the rule is but an aid rather than a categorical imperative. All the goods on the premises were subject to the landlord's distraint; and it would be somewhat anomalous to suppose that he intended to restrict the coverage of his levy. This is particularly true in light of the fact that the landlord was attempting to distrain for an amount exceeding the value of everything on the premises. In advancing a contrary construction, Textile emphasizes the fact that the rent claim was later reduced in the bankruptcy proceedings—a subject which will be discussed later—to $1,054.11. But this is surely irrelevant since the issue presented is the coverage of the notice at the time of the levy.

Textile next takes the position that when the goods were replevied and Textile's replevin bond posted, the lien of the landlord was discharged and transferred to the replevin bond. This contention overlooks the fact that the goods were not replevied; a restraining order, which Textile never attempted to vacate, was issued on the same day by the bankruptcy court. The bond posted by Textile was predicated upon the assumption that possession of the goods would be acquired; it was to serve as security for such possession. Since possession was frustrated by the restraining order, Textile could not have been held on its bond. The bond never took effect due to the intervention of the bankruptcy court, thereby precluding discharge of the landlord's lien.

Textile's principal contention is that the landlord forfeited his lien by distraining for an excessive amount. As noted previously, the distraint was for a sum in excess of $55,000; while the lien recognized by the referee for rent due without acceleration was for $1054.11. Textile relies upon In re Mount Holly Paper Co., 3 Cir., 1940, 110 F.2d 220, and J. J. Pocock, Inc., to Use of G. M. A. C. v. Levy, 1938, 130 Pa.Super. 94, 196 A. 869. The Pocock case is completely inapposite; it dealt not with forfeiture of a lien, but with a scheme between the tenant and the purchaser at a distraint sale to defraud the bailment-lessor of the goods. The Mount Holly case is more nearly in point. The court there held that the Bankruptcy Act invalidated the lien of a landlord who had distrained excessively. The finding of excessive distraint in Mount Holly stemmed from the particular facts involved. While recognizing the validity of accelerating future rent upon default of the tenant, 110 F.2d at page 223, the court found that there had been no acceleration, id. at page 224. Moreover, the landlord's actions after bankruptcy were deemed inconsistent with a claim for accelerated future rent. Ibid. In the instant case no facts surrounding the distraint are given. As Textile quite correctly points out in its brief, there has been no finding by the Referee concerning acceleration. Frankly, it is uncertain whether this point was raised before the Referee. Textile maintains that the discrepancy between the amount claimed in the notice of distraint and that allowed as a lien in bankruptcy compels a finding of excessive distraint. But this is indicative of nothing; because the claim of a landlord who properly accelerated prior to bankruptcy would nonetheless be limited in bankruptcy by § 67, sub. c(1), 11 U.S.C.A. § 107, sub. c. (1), to the amount due for actual use and occupancy as provided in § 64, sub. a(5), 11 U.S.C.A. § 104, sub. a(5). In view of this it is impossible to conclude that the distraint was excessive. Since Textile advocates such a conclusion it was incumbent upon it to adduce factual data in support. On this ground alone the Court would be justified in rejecting the argument.

Assuming for the moment that the distraint was excessive, Textile's contention must nevertheless fail. In the Mount Holly case the court reasoned that since the lien was not invalidated under other

provisions of the Act, it was protected by what was then § 67, sub. d:

"Liens given or accepted in good faith and not in contemplation of or in fraud upon this Act, and for a present consideration, which have been recorded according to law, if record thereof was necessary  *  * to impart notice, shall, to the extent of such present consideration only, not be affected by this Act." Act of June 25, 1910, ch. 412, § 12, 36 Stat. 842.

Noting that this section required "good faith", the court found that the excessive distraint constituted a knowing breach of the landlord's duty not to distrain excessively, and therefore negated the existence of "good faith". Hence, § 67, sub. d invalidated the lien.

The use of § 67, sub. d to affirmatively invalidate a lien otherwise valid appears questionable. See 4 Collier, Bankruptcy ¶ 67.20, at 179–80 & n. 5 (14th ed. Moore & Oglebay 1942). However, the provision, as such, has now been eliminated from the Act. The report of the House Committee accompanying the bill that excised § 67, sub. d questioned its adequacy, and stated that its content had been provided for in §§ 60, sub. b, 67, subs. a(3), d, and 70, sub. e, 11 U.S.C.A. §§ 96, sub. b, 107, subs. a(3), d, 110, sub. e dealing with preferential and fraudulent transfers. H.R.Rep. No. 1409, 75th Cong., 1st Sess. 32 (1937). See also, S. Rep. No. 1916, 75th Cong., 3d Sess. 17 (1938). Therefore, it would seem that invalidation of the landlord's lien under the present statute must rest upon a specific section thereof, particularly those mentioned above.[1] It does not appear, and Textile does not contend, that any provision in the statute is adequate for this purpose. Indeed, § 67, sub. b, 11 U.S.C.A. § 107, sub. b, specifically validates the lien. This failure on the part of Textile to take cognizance of the impact of the revision of the statute upon the Mount Holly case is fatal to its attempt to strike down the lien.

Textile next suggests that under Pennsylvania law its security interest is a lien superior to the landlord's. Absent the Uniform Commercial Code, such a position would be clearly untenable. It is provided by statute in Pennsylvania that on a sale following a distraint for rent, the claim of the landlord " *  *  * shall be a lien on the proceeds  *  *  * and be paid first out of the proceeds of such sale." Pa.Stat.Ann. Tit. 68, § 322 (Purdon Supp. 1958). A literal reading of this language indicates that landlord would prevail; and the cases have so held. See, e. g., In re Quaker City Unifrom Co., supra, 238 F.2d at page 157; Reinhart v. Gerhardt, 1943, 152 Pa. Super. 229, 31 A.2d 737; Herman v. Osgood, Pa.C.P.1955, 103 Pitt.L.J. 231. Textile advances the theory that the law in this regard has been changed by the adoption of the Uniform Commercial Code. The article of the Code dealing with secured transactions provides that it does not apply:

"(b) to a landlord's lien  *  *  * or

"(c) to a lien given by statute or other rule of law for services or materials except as provided in Section 9–310 on priority of such liens  *  *  *."

Pa.Stat.Ann. Tit. 12A, § 9–104(b, c) (Purdon 1954).

Section 9–310 provides:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien given by statute  *  *  * for such materials or services takes priority over a perfected security interest  *  *  *."

Id. § 9–310.

---

1. This is not intended to exclude the possibility, given a proper factual basis, of invoking the general equitable powers of the bankruptcy court to invalidate a lien. Compare Pepper v. Litton, 1935, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281; Freeman v. Swink, 4 Cir., 1958, 261 F.2d 84; Moore, Debtors' & Creditors' Rights 790–96 (1955 ed.). The point was not raised by Textile either in its brief or on oral argument.

It has been suggested that a landlord's lien may come within § 9–310 as a lien for "services or materials", and accordingly take priority over a security interest. See Pa. Bar Association Notes to § 9–310; Schwartz, Pennsylvania Chattel Security & the Commercial Code, 98 U.Pa.L.Rev. 530, 540–41 (1950). This approach seems highly questionable in light of the distinction drawn between such liens and that of a landlord in § 9–104(b, c). Furthermore, the drafters of the Code have stated that § 9–310 was intended to secure claims arising from work that enhances or preserves the value of the collateral. § 9–310, Comment 1. The act of leasing the premises could hardly be thought to bear this relation to the value of the goods situated thereon.

Aside from this aspect of the problem, the Code evidences no intent to change existing law. The most that may be safely said is that it does not deal with the question, as indicated by § 9–104(b) excluding a landlord's lien from the purview of the article. While appearing to concede this in its brief, the absence of any applicable provision leads Textile to assert that a Code security interest is superior to the landlord's lien. The Court feels that a more rational conclusion is that existing law was undisturbed by enactment of the Code.

Finally, Textile resorts to a plea that the doctrine of marshaling be invoked. This is the doctrine whereby one claiming a lien against two or more classes of property, one of which is also subject to a junior lien, will be required to exact satisfaction from the property not subject to the junior lien. Thus, the junior lien is preserved where other assets exist sufficient to satisfy the senior lien. See Collier, op. cit. supra, par. 67.27, at 300. Textile's reliance upon the doctrine in the instant case is misplaced. Although the landlord's lien attached to property on the bankrupt's premises other than that subject to Textile's security interest, by virtue of § 67, sub. c (1), 11 U.S.C.A. § 107, sub. c(1), the lien is subordinated to both wages and costs of administration. These latter claims are more than sufficient to exhaust all other assets of the estate, thus compelling the landlord to resort to the fund claimed by Textile. In this situation the possibility of marshaling is obviously excluded.

The Court is next faced with Textile's argument that its security interest is superior to the claim of the Commonwealth for unemployment contributions and interest. The Pennsylvania statute provides that claims by the state for contributions shall constitute a lien upon the employer's property, Pa.Stat.Ann. Tit. 43, § 788.1 (Purdon 1952), and further that the lien "shall be paid in full prior to all other claims * * *." upon distribution of the employer's assets, id. § 790 (Purdon Supp. 1958). The statutory material cited would appear to establish the state's priority. Textile seeks to avoid this construction by reliance upon Ersa, Inc., v. Dudley, 3 Cir., 1956, 234 F.2d 178. The Ersa case involved a question of priority between a similar state claim and a Federal tax lien. The court held that the state's lien had not been perfected to the extent required by Federal law to take priority over the Government's lien. While this case is controlling on the question of the relative standing as a matter of Federal law of a lien such as that held by the state and a Federal tax lien, it is not concerned with the status under state law of the Commonwealth's lien as opposed to a security interest. The Ersa case, in turn, relied heavily upon Commonwealth ex rel. Unemployment Compensation Fund v. Lombardo, 1947, 356 Pa. 597, 52 A.2d 657. There the question posed was whether a lien for contributions which had been recorded, but upon which no writ of *fieri facias* (the first step in execution) had issued, was valid against a purchaser for value without notice of the lien. The Pennsylvania Supreme Court affirmed on the basis of an opinion of the lower court which had held the lien ineffective under the facts stated until a writ of *fieri facias* had issued. While there is language in the opinion pertaining to sales in the or-

dinary course of trade, it does not appear whether the sale in question was actually such. Compare Pa.Stat.Ann. Tit. 12A, § 9–307(1) (Purdon 1954). It was upon the basis of this case that the Circuit Court in Ersa held that the lien of the state was not perfected at the time the Federal lien attached. However, as noted above, Ersa turned upon a point of Federal law.

The Lombardo case itself does not suggest that the lien of the Commonwealth in the instant case is inferior to Textile's security interest; for Textile does not stand in the same position as the claimant in Lombardo. To extend the effect of the case to a situation where the competing claimants are the state and a secured creditor would be to render the language of the statute dealing with priority, Pa.Stat.Ann. Tit. 43, § 790 (Purdon Supp. 1958), meaningless, and to frustrate the evident intent of the legislature to assure prior payment of the Commonwealth's lien. This interpretation is in accord with the decisions of the lower Pennsylvania courts. See Ferbro Trading Corp. v. Jo-Mar Dress Corp., C.P.1951, 78 Pa.Dist. & Co.R. 337, (Lombardo distinguished); Potter Title & Trust Co. v. International Penn Collieries Co., C.P.1949, 68 Pa.Dist. & Co.R. 591.

It should be mentioned that the great bulk of the liens for unemployment contributions were filed subsequent to the perfection of Textile's security interest. Textile attempts to turn this fact to its advantage by quoting the principle "the first in time is the first in right." Unfortunately, for Textile, it has once again confused the applicable law; for the cases cited in support of the principle deal with facets of Federal rather than State law. The language of the Pennsylvania statute indicates no distinction between liens filed prior and those filed subsequent to the perfection of interests such as Textile's; and none has been drawn in the cases. See, e. g., Ferbro Trading Corp. v. Jo-Mar Dress Corp., supra.

From what has been said it is clear that both the landlord's lien and that of the Commonwealth are superior under Pennsylvania law to Textile's interest. Since the available fund is adequate for the payment of both, it is unnecessary to decide their priority *inter se*. See Ferbro Trading Corp. v. Jo-Mar Dress Corp., supra. Being statutory liens they are subordinated to wages and the costs of administration by § 67, sub. c(1) of the Bankruptcy Act. Applying the reasoning of the Quaker City case, Textile's interest, being inferior under applicable lien law to both, is also subordinated.

For the foregoing reasons, the decision of the Referee will be affirmed.