**GEVYN CONSTRUCTION CORP., and the Travelers Indemnity Company, Plaintiffs,**

v.

**AFFILIATED ENGINEERS, INC., et al., Defendants.**

**Civ. A. No. 73–168.**

United States District Court, W. D. Pennsylvania. April 25, 1974.

Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., for plaintiffs.

Plowman & Spiegel, Lawrence Purpura, Sp. Atty. Gen., Gatz, Cohen, Segal & Koerner, Morris, Saifer & Makoroff, Metz, Cook, Hanna & Kelly, Pittsburgh, Pa., for defendants.

## OPINION AND DECREE

SNYDER, District Judge.

This is an interpleader proceeding instituted by Gevyn Construction Corporation (Gevyn) and The Travelers Indemnity Company (Travelers). The problem presently before the Court involves a determination of the priority of liens.

On October 9, 1973, this Court entered an Order allowing the Interpleader, directing the deposit of funds into the Registry of the Court, and providing that the claims against the Plaintiffs and the Surety Bond be discharged. Pursuant to this Order, $106,886.50 was paid into the Registry of the Court. When the Complaint was filed, there were six parties designated as Defendants who alleged adverse claims to the Fund. These were:

| CLAIMANT | AMOUNT CLAIMED |
|---|---|
| Commercial Bank & Trust Company | Entire Fund |
| Commonwealth of Pennsylvania | $ 9,048.61 |
| Concrete Accessories Corporation | $ 2,108.16 |
| Knickerbocker Russell Company | $ 2,282.55 |
| Laborers' Dist. Council of W. Pa. | $ 6,564.64 |
| Linco Supply Company | $17,013.79 |
| Total Claims other than Commercial Bank | $37,017.75 |

On January 31, 1974, upon the Motion of the Commercial Bank and Trust Company, an Order was entered which directed the Clerk to pay to Commercial Bank, $88,299.87 from the Fund, leaving a balance of $18,586.63 to be held pending further Order of Court. At that time, there were only three remaining claimants, because the claims of the Linco Supply Company and the Knickerbocker Russell Company were dismissed, and the claim of the Laborers' District Council was settled. This left only the Commercial Bank, the Commonwealth of Pennsylvania and Concrete Accessories Corporation to challenge the Fund.

A brief discussion of the history of the case is appropriate to understand the various conflicting claims against the Fund. On January 4, 1965, Gevyn entered into a contract with the General State Authority of the Commonwealth of Pennsylvania for the construction of Convalescent Dormitories at the Mayview State Hospital, Mayview, Pennsylvania. On March 30, 1965, Gevyn entered into two construction subcontracts with Affiliated Engineers, Inc. (Affiliated). Gevyn and Travelers furnished a surety bond to the General State Authority for the full payment of all labor, materials, and equipment bills for the performance of the Principal Contract.

Certain disputes arose between Gevyn and Affiliated which became the subject of an action brought by Gevyn against Affiliated in the United States District Court for the Western District of Pennsylvania at Civil Action No. 68–1001. This action was settled by the parties and the stipulation of settlement provided for the commencement of this Interpleader action which is presently before the Court. Gevyn deposited the stipulated proceeds of $100,000.00 into the Registry pending a determination of adverse claims to the said Fund.

## I. CONCRETE ACCESSORIES CORPORATION CLAIM.

From April of 1965, to November of 1965, Concrete Accessories Corporation *leased* equipment and *sold* merchandise to Affiliated in the total amount of

$3,588.23. When payment for the same was not forthcoming, Concrete filed suit against Affiliated in the Court of Common Pleas of Allegheny County, Pennsylvania, and judgment was taken by default on September 29, 1970 for the amount of the claim and interest, for the total of $4,754.33. (Claim $3,588.23 and Interest from the date due $1,166.-10). The Amended Complaint in that suit included all the claims asserted in this Interpleader proceeding. Concrete entered into negotiations with Affiliated for a partial payment of $1,800.00 (leaving about $2,954.33 unpaid) and the docket was marked satisfied on June 30, 1971.

■ Commercial Bank, in this suit, contends that Concrete cannot here claim the balance of the satisfied debt. However, satisfaction of the collateral judgment is not conclusive proof of payment of the primary obligation. As stated in Winters v. Wolfskill, 126 Pa. Super. 168, 190 A. 395 (1937) quoting from Fleming v. Parry, 24 Pa. 47 at p. 51, "There is no magic in an entry of satisfaction, either on a judgment or on a mortgage, which can prevail against the truth and equity of the transaction." Thus, if the extinguishment of the debt was not intended, the satisfaction of a judgment was not sufficient to wipe out the debt. In Epstein v. Kramer, 365 Pa. 589, 76 A.2d 212 (1950), the Supreme Court of Pennsylvania held that a petition for a rule to show cause why a satisfaction of a judgment should not be stricken from the record was equitable in nature and governed by equitable principles. The Court, however, found that the plaintiff should have sued in assumpsit for payment of a judgment that had been marked satisfied in the Prothonotary's Office in exchange for the defendant's promise to pay. There is nothing in the instant record which would indicate the Concrete either received payment in full or intended extinguishment of the debt.

■■ A review of the items sold and leased to Affiliated indicates that all of the transactions were prior to September 16, 1965, and since no suit was entered on the within action until April 5, 1973, the claim of Concrete is barred by the Statute of Limitations of four years as provided by the Uniform Commercial Code, Act of April 6, 1953, P.L. 3, 12A P.S. 2–725 (1970) for goods sold. As for the items leased or rented, the governing Statute of Limitations would be the Act relating to actions on contracts not under seal, namely, the Act of March 27, 1713, 1 Smith's Law 76, 12 P.S. § 31 (1953) which bars claims after six years from their accrual. (We do not need to consider the provision of the surety bonds requiring actions to be commenced within one year from the date of final settlement with the General State Authority, which paraphrased the statutory law in respect to recovery under labor and material bonds, Act of March 31, 1949, P.L. 372, 71 P.S. § 1707.11 (1962)). Thus, all claims asserted by Concrete are barred.

## II. COMMERCIAL'S CLAIM vs. COMMONWEALTH OF PENNSYLVANIA

On September 2, 1965, Affiliated assigned its accounts receivable from Gevyn (now the Fund in question) to Commercial Bank. Commercial filed a financing statement evidencing the assignment in the Prothonotary's Office of the Court of Common Pleas on May 18, 1966, and with the Secretary of the Commonwealth on May 19, 1966.

Commercial Bank subsequent to September 2, 1965, but prior to the filing of the financing statement on May 18, 1966, advanced the sum of $205,282.30 pursuant to the assignment. After the assignment, but before the filing of the financing statement, the Commonwealth of Pennsylvania filed a lien on March 22, 1966, in the Office of the Prothonotary of Allegheny County, Pennsylvania for unpaid contributions to the Unemployment Compensation Fund. On May 16, 1966, the Commonwealth issued a Writ of Execution on the Judgment, which Writ was delivered to the Sheriff

on May 18, 1966. The Commonwealth of Pennsylvania claims that its lien was perfected and became a lien on the property, real or personal, of Affiliated on the date that its claim was filed, to-wit, March 22, 1966, and that Commercial did not file its financing statement until May 18, 1966. It is our conclusion that the lien of the Commonwealth of Pennsylvania has priority over that of the Commercial Bank and Trust Company with regard to the Fund.

The "Unemployment Compensation Law" (Act of December 5, 1937, P.L. 2897, 43 P.S. § 751 et seq., as amended through June 22, 1964) provides at § 788.1 as follows:

"(a) All contributions and the interest and penalties thereon due and payable by an employer under the provisions of this act shall be a lien upon the franchises and property, both real and personal, including after-acquired property of the employer liable therefor and shall attach thereto from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. The lien imposed hereunder shall have priority from the date of such entry of record and shall be fully paid and satisfied out of the proceeds of any judicial sale of property subject thereto, before any other obligation, judgment, claim, lien or estate to which said property may subsequently become subject, except costs of the sale and of the writ upon which the sale was made and real estate taxes and municipal claims against such property, but shall be subordinate to mortgages and other liens existing and duly recorded or entered of record prior to the recording of the tax lien. In the case of a judicial sale of property subject to a lien imposed hereunder, upon a lien or claim over which the lien imposed hereunder has priority, as aforesaid, such sale shall discharge the lien imposed hereunder to the extent only, that the proceeds are applied to its payment and such lien

shall continue in full force and effect as to the balance remaining unpaid.

(b) The department may at any time transmit to the prothonotaries of the respective counties of the Commonwealth, to be by them entered of record and indexed as judgments are now indexed, certified copies of all liens imposed hereunder, upon which record it shall be lawful for writs of execution to be directly issued without the issuance and prosecution to judgment of writs of scire facias; Provided, That not less than ten (10) days before the issuance of any execution on the lien, notice of the filing and the effect of the lien shall be sent by registered or certified mail to the employer at his last known post office address. No prothonotary shall require as a condition precedent to the entry of such liens the payment of the costs incident thereto.

(c) The liens shall continue for five years from the date of entry and may be revived and continued in the manner now or hereafter provided for the renewal of judgments or as may be provided in The Fiscal Code, as amended.

(d) Notwithstanding any other provisions of this section, the lien herein provided for shall have no effect upon any stock of goods, wares or merchandise regularly sold or leased in the ordinary course of business by the employer against whom said lien has been entered unless and until a writ of execution has been issued and levy made upon said stock of goods, wares and merchandise."

The leading case with respect to the question of priority of liens is Commonwealth, Etc. v. Lombardo, 356 Pa. 597, 52 A.2d 657 (1947) which dealt with the same act prior to the amendments of 1963 and 1964. In that case, the Pennsylvania Supreme Court considered the following language from the "Unemployment Compensation Law":

"All contributions and the interest and penalties thereon due and payable

by an employer under the provisions of this act shall be a lien upon the franchises and property, both real and personal, of the employer liable therefor, from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. Whenever the franchises or property of an employer is sold at a judicial sale, all contributions and the interest and penalties thereon thus entered of record shall first be allowed and paid out of the proceeds of such sale in the same manner and to the same extent that State taxes are paid: Provided, however, That the lien hereby created shall not be prior to pre-existing duly recorded real estate mortgages. *The department may at any time transmit to the prothonotaries of the respective counties of the Commonwealth to be by them entered of record, certified copies of all liens for unpaid contributions, interest and penalties which may now exist or hereafter arise, upon which record it shall be lawful for writs of scire facias to issue and be prosecuted to judgment and execution in the same manner as such writs are ordinarily employed."* (Emphasis in original.)

The Court in *Lombardo* noted that there was an ambiguity between the first sentence, which appeared to give the Commonwealth priority, and the last sentence with respect to execution. The Court found that the language of the last section indicated that the lien was to be enforced in accordance with the normal execution practice, *viz.* in accordance with the Act of June 16, 1836, P.L. 755, § 39, 12 P.S. § 2291 which provided as follows:

"no writ of fieri facias, or other writ of execution, shall bind the property or the goods of the person against whom such writ of execution is sued forth, but from the time such writ shall be delivered to the sheriff, under sheriff, or coroner, to be executed."

The Court concluded that the lien of the Commonwealth did not attach to personal property until the writ of Fi. Fa. was delivered to the sheriff, notwithstanding the first sentence of the Unemployment Compensation Law.

In Ersa, Inc. v. Dudley, 234 F.2d 178 (3rd Cir. 1956), the Court cited *Lombardo* in holding that as to competing liens, the lien of the Commonwealth did *not* have priority from the date of entry. It is clear that if the Commonwealth is to prevail, the amendments to the "Unemployment Compensation Law" must either satisfy the objections of the Pennsylvania Supreme Court in *Lombardo*, and the Court of Appeals in *Ersa*, or be distinguished.

Since the decisions in *Lombardo* and *Ersa*, the Unemployment Law has been amended twice, in 1963 and in 1964. The 1963 Amendment made the following changes (italicized material added and bracketed material deleted by the amendment):

Contributions to be liens; entry and enforcement thereof.—All contributions and the interest and penalties thereon due and payable by an employer under the provisions of this act shall be a lien upon the franchises and property, both real and personal, *including after-acquired property* of the employer liable therefor *and shall attach thereto* from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. [Whenever the franchises or property of an employer is sold at a judicial sale, all contributions and the interest and penalties thereon thus entered of record shall first be allowed and paid out of the proceeds of such sale in the same manner and to the same extent that State taxes are paid: Provided, however, that the lien hereby created shall not be prior to pre-existing duly recorded real estate mortgages.] *The lien imposed hereunder shall have priority from the date of such entry of record and shall be fully paid and satisfied out of the proceeds of any judicial sale of property subject thereto, before any other obligation, judgment,*

*claim, lien or estate to which said property may subsequently become subject, except costs of the sale and of the writ upon which the sale was made and real estate taxes and municipal claims against such property, but shall be subordinate to mortgages and other liens existing and duly recorded or entered of record prior to the recording of the tax lien. In the case of a judicial sale of property subject to a lien imposed hereunder, upon a lien or claim over which the lien imposed hereunder has priority, as aforesaid, such sale shall discharge the lien imposed hereunder to the extent only, that the proceeds are applied to its payment, and such lien shall continue in full force and effect as to the balance remaining unpaid.* The department may at any time transmit to the prothonotaries of the respective counties of the Commonwealth, to be by them entered of record, *and indexed as judgments are now indexed,* certified copies of all liens [for unpaid contributions, interest and penalties which may now exist or hereafter arise,] *imposed hereunder* upon which record it shall be lawful for writs of [scire facias to issue and be prosecuted to judgment and execution in the same manner as such writs are ordinarily employed] *execution to be directly issued without the issuance and prosecution to judgment of writs of scire facias: Provided, That not less than ten (10) days before the issuance of any execution on the lien, notice of the filing and the effect of the lien shall be sent by registered or certified mail to the employer at his last known post office address.* No prothonotary shall require as a condition precedent to the entry of such liens the payment of the costs incident thereto. *Such liens shall continue for five years from the date of entry and may be revived and continued in the manner now or hereafter provided for the renewal of judgments or as may be provided in The Fiscal Code, as amended.*

The 1963 Amendment thus added language indicating that the priority of the Commonwealth's *lien* dates from its entry of record. However, *the 1963 Amendment also retained the language of the original Act with respect to execution,* deleting only the reference to a writ of Scire Facias. The deletion of the reference Scire Facias was to reflect the change in procedure whereby the lien of the Commonwealth dated from entry.

Thus, after the 1963 Amendment, the Unemployment Compensation Law still contained the ambiguity found by the Pennsylvania Supreme Court in *Lombardo,* i. e. the language indicating that a lien attaches to personal property of the defendant immediately upon filing, is still in conflict with the language regarding execution, and with the law of the Commonwealth of Pennsylvania that a judgment does not constitute a lien against personal property of the defendant, without execution thereon.

The 1964 Amendment, without substantive change, divided the section of the Unemployment Compensation Law which is applicable hereto, into four subsections. In addition, the 1964 Amendment added subsection (d), exempting therefrom personal property of the employer sold in the normal course of business. This latter is evidently an attempt to satisfy the Pennsylvania Supreme Court's objection in *Lombardo* with respect to the example cited in that opinion, but the 1964 Amendment does nothing to cure the ambiguity found by that Court in *Lombardo.*

The Commercial Bank insists that the Amendments do not resolve the ambiguity, and if the Commonwealth's lien is given priority, the result would be exactly what the Supreme Court of Pennsylvania sought to avoid in *Lombardo.* The Commonwealth of Pennsylvania, however, argues that the 1963 and 1964 Amendments serve to give to the Commonwealth in the instant case a choate or perfected lien as of the date of the Commonwealth's filing of the lien with the Prothonotary: "No longer is the fil-

ing only a caveat of a more perfected lien to come, for the amended act eliminated the necessity of the 'issuance and prosecution to judgments of writs of scire facias', but the lien attached immediately upon recording thereof." (Commonwealth's Memorandum of Law, at p. 6). With respect to Subsection (d), the Commonwealth avers a legislative intent to bind all other properties of the employer except those specifically mentioned in Subsection (d), as of the date of filing of the lien.

Since the passage of the 1963 and 1964 Amendments to the Pennsylvania Unemployment Compensation Law, there have been no reported cases brought to the attention of the Court which deal with this particular type of situation or one arguably like it. Most of the cases cited by Counsel dealt with problems of the priority of competing liens between federal tax liens and state tax liens (e. g. Ersa, Inc. v. Dudley, *supra,* and In Re Lehigh Valley Mills, Inc., 341 F.2d 398 (3 Cir. 1965)). While neither party has satisfactorily distinguished these cases from the instant case, this Court finds that they are distinguishable on the basis of the analysis of the Third Circuit Court of Appeals in the case of In Re Einhorn Bros., Inc., 272 F.2d 434 (3rd Cir. 1959). In that case, Einhorn borrowed money from the Textile Banking Company, Inc. in January of 1957. As security for the loan Einhorn entered into an inventory loan agreement granting the bank a security interest upon all of Einhorn's merchandise inventory. Following the filing provisions of the Uniform Commercial Code, the bank perfected its security interest, and obtained a valid lien, upon the inventory. *Thereafter,* the Commonwealth of Pennsylvania filed claims against Einhorn for non-payment of sums due under the Unemployment Compensation Law and thereby obtained a lien on all the real and personal property of Einhorn as provided in 43 P.S. § 788.1. In comparing the superiority of the two liens, the Court stated as follows (272 F.2d at pp. 441–443):

"Applicable Pennsylvania statutes clearly indicate the superiority of the Commonwealth's liens for sums due under the Unemployment Compensation Law over any other liens on the same property. In order to overcome the clear statutory directives, the Bank relies first on the case of Commonwealth, etc., v. Lombardo. The Bank points out the following language in that opinion:

'* * * The language of section 308.1 of the Unemployment Compensation Law [Tit. 43 Sec. 788.1 of Purdon's, see footnote 21, supra] is not in our opinion effective to establish a lien against the personal property of an employer so as to prevent its transfer to a bona fide purchaser for value prior to the time that the writ of fieri facias, the first step in the execution process, is placed in the hands of the sheriff.' At pages 608, 609 of 356 Pa., at page 662 of 52 A.2d.

From this statement the Bank concludes that the Commonwealth, in the case at bar, never had a valid lien against the merchandise inventories of the Bankrupt, since the Commonwealth never issued a writ of fieri facias.

The simple answer to this contention is found in the same statement from the *Lombardo* case upon which the Bank relies: The Court says that the language of Sec. 308.1 is not effective to establish a lien against personal property of an employer *'so as to prevent its transfer to a bona fide purchaser for value.'* The Bank contends, however, that its lien is entitled to the same protection against the Commonwealth's lien as is accorded a bona fide purchaser for value. But this contention assumes the result for which the Bank argues. The whole point of the *Lombardo* case is that Sec. 308.1 does not *specifically* state the effect to be given the Commonwealth's lien as against a bona fide purchaser for value. The Pennsylvan-

214

ia Supreme Court itself stated in the opinion:

> 'The real question here is whether an innocent purchaser of personal property ought to be found by such notice as is afforded by the filing of the lien. As we have analyzed the law, under the principles of statutory construction, our answer is no.' At page 605 of 356 Pa., at page 661 of 52 A.2d.

But as to the effect of the Commonwealth's lien *as against competing liens*, Sec. 308.1 *specifically* states:

> 'All contributions * * * thus entered of record shall *first* be allowed and paid out of the proceeds of such sale .* * *' (Emphasis supplied.)

The Fiscal Code (72 Purdon Stat. § 1401, 1958 Supp., quoted in footnote 21, supra) specifically provides that at a judicial sale the Commonwealth's lien shall be allowed *before any other claim or lien*. The *Lombardo* case has no effect on the clear meaning of these statutes as applied to the facts of the case at bar, i. e., as applied to the question of the superiority of the Commonwealth's lien as against the lien of the Bank at a judicial sale, or sale in bankruptcy.

But the Bank contends that the *Lombardo* case has already been applied by this Court in resolving a question of competing liens. In the case of Ersa Inc. v. Dudley, 3 Cir., 1956, 234 F.2d 178, this Court held that the filing of a lien for unpaid contributions due under the Unemployment Compensation Law does *not* create a perfected lien upon the employer's personal property, and that the lien is perfected only when a writ of fieri facias is delivered to the sheriff. Following the statement in the *Lombardo* case (to the effect that the lien is not established until the sheriff has the writ of fieri facias), the Court held that as between a prior recorded lien of the Commonwealth and a lien of the United States, the lien of the United States prevailed, although arising (in point of time) *after* the Commonwealth's liens were recorded.

The Court below distinguished the *Ersa* case on the ground that it determined the extent to which liens of the Commonwealth (arising under the Unemployment Compensation Law) must be perfected in order to prevail over a subsequent lien of the Federal Government. In addition, we observe another distinguishing feature of the *Ersa* case, which is that the lien competing with that of the Commonwealth arose subsequent to the recording of the Commonwealth's lien, whereas here the lien competing with that of the Commonwealth arose prior to the recording of the Commonwealth's lien. In the case at bar whether or not the Commonwealth issued a writ of fieri facias could have made no difference to the Bank. This is true since it obtained· the lien prior to the time of recording ·by the Commonwealth."

The holding of the *Ersa* case was to the effect that the State's lien had not been perfected to the extent required by *Federal* law to take priority over the Federal Government's lien. As the District Court stated in the *Einhorn* case, "While this case [Ersa] is controlling on the question of the relative standing as a matter of Federal law of a lien such as that held by the state and a Federal tax lien, it is not concerned with the status under state law of the Commonwealth's lien *as opposed to a security interest*." (Emphasis added.) (171 F.Supp. 655, 660 (E.D.Pa.1959)). In order to make it perfectly clear what its position was on this matter, the Court further explained why the Textile Bank's position was untenable (171 F.Supp. at p. 661):

> "It should be mentioned that the great bulk of the liens for unemployment contributions were filed subsequent to the perfection of Textile's security interest. Textile attempts to turn this fact to its advantage by

quoting the principle 'the first in time is the first in right.' Unfortunately, for Textile, it has once again confused the applicable law; for the cases cited in support of the principle deal with facets of Federal rather than State law. The language of the Pennsylvania statute indicates no distinction between liens filed prior and those filed subsequent to the perfection of interests such as Textile's; and none has been drawn in the cases. See, e. g., Ferbro Trading Corp. v. Jo-Mar Dress Corp., *supra* [78 Pa. Dist. & Co. 337]."

In the instant case, in addition to the fact that the Commonwealth's lien is not here being made secondary to a Federal lien as in *Ersa*, we also have the fact that the assignment of the inventory to the Bank occurred prior to the recording of the Commonwealth's lien, while the recording of the financing statement by the Bank occurred two days after the issuance of the writ of execution on behalf of the Commonwealth, but on the same day that the writ of execution was delivered to the Sheriff:

Assignment of inventory to
 Commercial Bank: 9–2–65
Comm. of Pa. files with
 Prothonotary: 3–22–66
Writ of Execution issued: 5–16–66
Writ of Execution delivered
 to Sheriff: 5–18–66
Commercial Bank files financ-
 ing statement: 5–18–66

Under all of these circumstances, this Court feels that the rationale of the *Einhorn* case is applicable to the instant case notwithstanding the fact that it arose prior to the 1963 and 1964 Amendments to the Pennsylvania Unemployment Compensation Law, or that it concerned a Bankruptcy proceeding. The case is in almost all respects identical to ours and, therefore, must be considered as controlling. The lien of the Bank must be declared to be inferior to that of the Commonwealth, and the Commonwealth must be entitled to priority of payment out of the Fund over the Bank.

An appropriate order will be entered.

### ORDER

And now, to-wit, this 25th day of April, 1974, for the reasons stated in the above Opinion, it is hereby ordered, adjudged and decreed that the remaining balance of the Fund in the sum of $18,586.63 on deposit with The Clerk of Court, the said Fund having been deposited by the Gevyn Construction Corporation and the Travelers Indemnity Company, is hereby distributed as follows: to the Commonwealth of Pennsylvania for the use of the Unemployment Compensation Fund the sum of $9,048.61; and the sum of $9,538.02 or the balance of the Fund to the Commercial Bank and Trust Company;

It is further ordered, adjudged and decreed that the request of Commercial Bank and Trust Company for counsel fees and/or costs be and the same is hereby denied;

It is further ordered, adjudged and decreed that the request of the Commonwealth of Pennsylvania for penalties and interest due on the original sum owed to it by Affiliated Engineers be and the same is hereby denied;

It is further ordered, adjudged and decreed that the Gevyn Construction Corporation and the Travelers Indemnity Company be and they are hereby discharged from any and all claims which could have been made against the Fund of $106,886.50 by any or all of the Defendants.